**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| PAUL ASBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:14-cv-00233-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Paul Asbury, who is proceeding *pro se*, appeals to the Court from a final decision of the Commissioner of Social Security denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion.

**I. PROCEDURAL HISTORY**

Asbury applied for DIB in November 2011, alleging disability as of February 22, 2011. (DE 9 Administrative Record ("AR") 12, 107). The Commissioner denied Asbury's application initially and upon reconsideration, and Asbury requested an administrative hearing. (AR 53, 64). On January 29, 2013, a hearing was conducted by Administrative Law Judge Jennifer Fisher ("the ALJ"), at which Asbury, who was represented by counsel at the time, and a vocational

---

[1] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

expert testified. (AR 28-52). On April 19, 2013, the ALJ rendered an unfavorable decision to Asbury, concluding that he was not disabled because despite the limitations caused by his impairments, he could perform a significant number of unskilled, sedentary jobs in the economy, including addresser, surveillance systems monitor, and document preparer. (AR 12-21). The Appeals Council denied Asbury's request for review (AR 1), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Asbury filed a complaint with this Court on August 4, 2014, seeking relief from the Commissioner's final decision. (DE 1). Asbury generally challenges the ALJ's consideration of the medical source opinions and the assigned residual functional capacity ("RFC"). (DE 13; DE 21). He more specifically challenges the ALJ's step-five finding in that he contends there are no available addresser jobs in Northern Indiana. Asbury also states that he had a stroke on March 6, 2014, and thus, that he has new medical evidence not before the ALJ at the time of the decision.

## II. FACTUAL BACKGROUND[2]

### *A. Background*

At the time of the ALJ's decision, Asbury was 47 years old (AR 53); had an eighth grade education (AR 35, 143); and had past work experience as a machine operator (AR 189-90). In his application, Asbury alleged disability due to congestive heart failure and a heart condition. (AR 142).

### *B. Asbury's Testimony at the Hearing*

At the hearing, Asbury testified that he last worked in either 2009 or 2010; he stopped work because "the job ran out." (AR 36). He had a heart attack in February 2011, when he was

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 596-page administrative record necessary to the decision.

unemployed (AR 36); he then participated in cardiac rehabilitation (AR 37-38). He does not have health insurance and was denied by Medicaid. (AR 38).

Asbury lives in a one-story home with his girlfriend, who works as a truck driver; he is home alone most of the time. (AR 41, 44). In a typical day, he lies on the couch and watches television, as he gets uncomfortable if he sits too long. (AR 45). He walks slowly around the block, but has some difficulty because his legs start hurting and he becomes short of breath. (AR 42-43). He performs light household chores, but intersperses these activities with periods of rest. (AR 43-44). He can climb a flight of stairs, but gets tired when doing so. (AR 44). He takes various medications without complaint of side effects; these include nitroglycerin, which he takes when physically exerting himself or under stress. (AR 39-40). He feels depressed sometimes because of his physical limitations, but he has not sought mental health treatment or felt suicidal. (AR 42).

### C. *Summary of the Medical Evidence*

On February 22, 2011, Asbury suffered a ventricular fibrillation arrest secondary to an acute myocardial infarction; he had been experiencing intermittent chest pain and tightness for the past six weeks. (AR 233-34, 237, 278-79). He underwent left heart catheterization, which revealed severe three-vessel coronary artery disease. (AR 233). An EKG reflected normal sinus rhythm with a left bundle branch block, and an x-ray showed cardiac enlargement. (AR 233-34, 247). An echocardiogram indicated that he had an ejection fraction of 20%. (AR 234). Although he was confused upon admission, the results of a battery of tests were essentially unremarkable, and his mental status improved remarkably after admission. (AR 261, 275). He underwent bypass surgery and did extremely well. (AR 254, 261). After a course of physical

3

therapy, Asbury was discharged on March 9, 2011, with a LifeVest and medications. (AR 260-61, 324).

On March 24, 2011, Asbury had a follow-up visit with Dr. David Schleinkofer at Fort Wayne Cardiology. (AR 324-26). Asbury completed a low-level treadmill and exercised for five minutes representing 53% of predicted maximum heart rate; no arrhythmia was noted during exercise. (AR 325). Dr. Schleinkofer referred him for phase two cardiac rehabilitation and a sleep apnea study. (AR 325). About that same time, Asbury was seen for a postoperative examination by a nurse practitioner at Fort Wayne CardioVascular Surgeons. (AR 426-27). He had stopped smoking, but was feeling anxious and depressed; she prescribed Wellbutrin. (AR 426-27).

On April 12, 2011, Asbury saw Dr. Peter Chaille at Fort Wayne Cardiology. (AR 409-10). He noted that Asbury's breathing was markedly improved and that he no longer had exertional angina. (AR 409). Dr. Chaille observed that Asbury was "progress[ing] well" and encouraged him to strive for physical activity. (AR 410). About that same time, Asbury had a follow-up visit with Dr. David Sowden of Fort Wayne CardioVascular Surgeons. (AR 428). He noted that Asbury felt "remarkably better than he did preoperatively," that he had no more chest pain, and that his breathing was "dramatically better." (AR 428). Asbury had been increasing his activity and was "very, very happy with his progress." (AR 428). Dr. Sowden instructed Asbury to gradually increase his activity as his physical conditioning allowed. (AR 428).

Asbury returned to Dr. Sowden on May 13, 2011. (AR 429). He noted that Asbury was doing "quite well" from a cardiac standpoint and that he was now able to do things he could not do preoperatively. (AR 429). With his increased activity, however, he developed bilateral hip

4

pain; an ultrasound showed bilateral common iliac artery stenosis of a significant degree. (AR 429). He could walk about one block. (AR 429). Dr. Sowden encouraged Asbury to increase his activity under Dr. Chaille's guidance. (AR 429).

On July 8, 2011, Dr. Chaille indicated that Asbury was clinically "doing very well," that he had no significant shortness of breath symptoms, and that his left ventricular function had improved. (AR 440). Dr. Chaille discontinued Asbury's LifeVest. (AR 440).

On July 29, 2011, Joseph A. Pressner, Ph.D., a state agency psychologist, reviewed Asbury's record and found that he did not have a medically determinable mental impairment. (AR 442). The psychiatric review technique form reflected that Asbury had no limitations in daily living activities; maintaining social functioning; or maintaining concentration, persistence, or pace. (AR 452). This opinion was later affirmed by a second state agency psychologist, William A. Shipley, Ph.D. (AR 508).

On August 6, 2011, Asbury was examined by David Ringel, D.O., at the request of the state agency. (AR 456-59). Asbury reported some occasional left-sided chest pain, but stated that it goes away fairly quickly without Nitroglycerin; he had "some occasional dyspnea on exertion" and told Dr. Ringel that his energy had not fully returned. (AR 456). Asbury estimated that he could walk four blocks on level ground, stand up to 30 minutes at a time and up to four hours in an eight-hour workday, and lift up to 10 pounds. (AR 456). He stated that sitting was not a problem for him. (AR 456). He indicated that he performed household chores, such as vacuuming, cooking, washing dishes, and shopping, at short intervals interspersed with periods of rest. (AR 456). On physical exam, Asbury had normal ambulation and motor strength, could get on and off the table, and walked on heels and toes and squatted without

5

difficulty. (AR 457-58).

On October 3, 2011, Asbury saw Dr. Chaille for an exercise treadmill stress test as part of his disability application. (AR 470). Dr. Chaille indicated that Asbury was "doing relatively well" with stable breathing and no chest pain, palpitations, or syncopal events; in general, however, he had been fatigued. (AR 470). Asbury reported that he walks at a slow pace and sometimes gets cramps in his legs, but that his walking was mainly limited by fatigue. (AR 470). He had no significant symptoms of chest discomfort on a submaximal stress test, but the test was limited by his generalized fatigue. (AR 470). Dr. Chaille stated that Asbury "did very well on the treadmill without significant claudication." (AR 471).

On October 20, 2011, M. Ruiz, M.D. a state agency physician, reviewed Asbury's record and concluded that he could lift up to 25 pounds frequently and 50 pounds occasionally; stand or walk up to six hours in an eight-hour workday; sit up to six hours in a workday; frequently balance, stoop, kneel, crouch, and crawl; and occasionally climb ramps, stairs, ladders, ropes or scaffolds. (AR 496-503). This opinion was later affirmed by a second state agency physician, J. Sands, M.D. (AR 507).

On March 9, 2012, Asbury saw Dr. Chaille for a follow-up visit. (AR 517). Dr. Chaille noted that Asbury's girlfriend had called several times with concern that Asbury had poor energy and was feeling short of breath. (AR 517). At the visit, however, Asbury had no significant complaints, stating that his breathing had been relatively stable. (AR 517). He indicated that he becomes short of breath with significant exertion, but that he really had not been doing much; he was not working and was spending most of his time on the couch. (AR 517). He reported only a twinge of chest discomfort at times, which would spontaneously resolve, and denied any

6

significant lower extremity claudication. (AR 517). Dr. Chaille wrote that Asbury's "biggest issue is with regards to lack of physical activity." (AR 518). Dr. Chaille referred Asbury to cardiac rehabilitation and "encouraged him to increase his physical activity at home as much as possible." (AR 518).

On April 13, 2012, Dr. Chaille completed a "cardiac medical source statement" on Asbury's behalf. (AR 510-13). He stated that Asbury had a guarded prognosis, identifying his symptoms as chest pain, weakness, exertional dyspnea, exercise intolerance, and chronic fatigue; he listed as a clinical finding the results of a June 2011 echocardiogram showing an ejection fraction of 35%. (AR 510). Dr. Chaille wrote that Asbury reported "severe fatigue and shortness of breath with minimal exertion." (AR 511). He opined that Asbury was incapable of even "low-stress" work and that his physical limitations cause him emotional difficulties such as depression and anxiety, which contribute to the severity of his functional limitations. (AR 511).

In addition, Dr. Chaille estimated that Asbury could stand or walk up to four hours in an eight-hour workday and that he needed to shift positions at will from sitting, standing, or walking. (AR 511). Dr. Chaille stated that, in a typical workday, Asbury would need to take several unscheduled breaks to lie down, up to four hours at a time, and that due to his congestive heart failure, he needed to elevate his legs to waist level during prolonged sitting at least 50% of the time. (AR 511-12). Dr. Chaille opined that Asbury could lift less than 10 pounds occasionally, rarely lift 10 to 49 pounds, and never lift 50 pounds or more; must avoid all exposure to extreme temperatures, high humidity, and cigarette smoke; and must avoid even moderate exposure to soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. (AR 512). Dr. Chaille indicated that Asbury would have "good days" and "bad

7

days," that he would likely be absent from work more than four days per month, and that his symptoms were severe enough to interfere with his attention and concentration to perform even simple tasks 25% or more of a workday. (AR 512-13).

On July 24, 2012, Asbury had a follow-up visit with Dr. Chaille, who noted that Asbury had just completed cardiac rehabilitation. (AR 515). Dr. Chaille wrote that he last saw Asbury in March and that "[s]ince that time he has actually been doing very well." (AR 515). Dr. Chaille observed that Asbury was "much more active than he was a few months ago" and that he denied any significant exertional shortness of breath, chest discomfort or other problems. (AR 515). Asbury complained of some bilateral hip pain with exertion, but stated that it was "really not lifestyle limiting to him." (AR 515). An echocardiogram showed an ejection fraction of 40%, which was improved from 25% previously. (AR 515).

## III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

8

record, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility," or substitute its judgment for the Commissioner's. *Id.* (citations omitted). Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v.*

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

9

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On April 19, 2013, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 12-21). She found at step one that Asbury had not engaged in substantial gainful activity after his alleged onset date. (AR 14). At step two, the ALJ concluded that Asbury's congestive heart failure with left bundle branch block and status post myocardial infarction; obesity; obstructive sleep apnea; and peripheral neuropathy were severe impairments. (AR 14-15). At step three, the ALJ determined that Asbury's impairment or combination of impairments were not severe enough to meet a listing. (AR 15).

Before proceeding to step four, the ALJ assigned Asbury the following RFC:

> [T]he claimant has the residual functional capacity to lift less than 10 pounds on a frequent or occasional basis. He is able to stand and/or walk for two hours in a standard eight-hour workday, but sit for six hours in a standard eight-hour workday. He is restricted to work that can be done either sitting or standing without being off task. He must alternate between sitting and standing about once an hour remaining at his workstation. He is occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He is restricted from climbing ladders, ropes and scaffolds. He must avoid concentrated exposure to extreme cold, heat and humidity. He is restricted from exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. He must be allowed to work at a flexible physical pace.

(AR 15). Based on this RFC and the vocational expert's testimony, the ALJ concluded at step

four that Asbury was unable to perform his past relevant work as a machine operator. (AR 19). The ALJ then determined at step five that Asbury could perform a significant number of unskilled, sedentary jobs within the economy, including addresser, surveillance systems monitor, and document preparer. (AR 20). Therefore, Asbury's claim for DIB was denied. (AR 20).

### C. The ALJ Failed to Adequately Evaluate Dr. Chaille's April 10, 2012, Cardiac Medical Source Statement

Asbury generally argues that the ALJ did not adequately consider the medical source opinions of record and assign an RFC reflective of all of his limitations. Upon review of the ALJ's decision and the record, the Court agrees that the ALJ failed to properly evaluate certain restrictions assigned on April 10, 2012, by Dr. Chaille, Asbury's treating cardiologist, necessitating a remand of the Commissioner's final decision.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see* 20 C.F.R. § 404.1527(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. § 404.1527(c)(2).

In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting

11

evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. § 404.1527(c); *see Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(c)(2). Nevertheless, "[a] claimant is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work'"; the determination of disability is reserved to the Commissioner. *Clifford*, 227 F.3d at 870; *see Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).

Here, the ALJ wrote three paragraphs about Dr. Chaille's cardiac medical source statement dated April 10, 2012. (AR 18-19). In her first paragraph, the ALJ summarized the restrictions reflected in Dr. Chaille's statement, including, in relevant part, that Asbury's prognosis was guarded; that he must shift positions at will from sitting, standing, or walking several times a day; could lift or carry 10 pounds on an occasional or frequent basis; must avoid all exposure to weather extremes and high humidity and avoid even moderate exposure to pulmonary irritants; would be off task 25% of the workday due to the distraction of his physical problems; must elevate his legs to waist level during prolonged sitting at least 50% of the workday; would be absent more than four days a month; and was incapable of performing even "low-stress" work. (AR 18). The ALJ did not mention, however, that Dr. Chaille also opined that Asbury would need to take several unscheduled breaks, up to four hours at a time, to lie down during the workday; that his signs and symptoms included chronic fatigue; and that he reported severe fatigue and shortness of breath with minimal exertion. (AR 510-11).

12

In her next two paragraphs, the ALJ discussed the weight she assigned to Dr. Chaille's opinion:

> The undersigned gave this opinion partial weight. The evidence as a whole, including Dr. Chaille's treatment records, does strongly corroborate his limitations in lifting, carrying, exposure to pulmonary irritants, exposure to weather extremes, and the need to shift positions. The undersigned has given these restrictions great weight.
>
> However, the undersigned has given no weight to Dr. Chaille's findings that the claimant is incapable of even low-stress jobs, or that he would miss more than four days of work per month due to his symptoms. These opinions appear to be quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Dr. Chaille did not document positive objective clinical or diagnostic findings to support the functional assessment. Finally, the undersigned notes that an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner, [and] therefore cannot be given special significance, although it is considered in the assessment of the claimant's [RFC].

(AR 19).

The ALJ must articulate, at least at some minimal level, her analysis of the evidence to allow this Court to trace the path of her reasoning and to be assured that she considered the important evidence. *Diaz*, 55 F.3d at 307; *see Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). "[W]hen there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence—error exists." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (emphasizing that unless the ALJ sufficiently articulates his reasoning, the reviewing court cannot tell if the ALJ rejected probative evidence or simply ignored it). Here, the ALJ did not address Dr. Chaille's opinion that Asbury would need to take several unscheduled breaks to lie down during the workday, which is important evidence to his claim for disability.

13

With respect to Asbury's fatigue, the Court agrees with the ALJ's observation that many of the treatment notes suggest that Asbury showed "steady improvement" after his heart attack. (AR 18). However, the ALJ's assertion that Asbury's "daily living activities were not those of a disabled person" is not adequately supported or explained. (AR 18). The daily activities that the ALJ describes in her decision are fairly restricted and punctuated with periods of rest. (AR 16); *see Weber v. Astrue*, No. 1:10-CV-00359, 2011 WL 6016636, at *9 (N.D. Ind. Dec. 2, 2011) (collecting cases) (rejecting the ALJ's assertion that the claimant's daily activities, which appeared no more than minimal in nature, were inconsistent with an assertion of "total disability").

Furthermore, although the ALJ explained that she assigned no weight to Dr. Chaille's opinion concerning absenteeism and Asbury's inability to perform even a "low-stress" job, the ALJ never explained what weight she assigned to Dr. Chaille's opinion that Asbury would need to elevate his legs to waist level at least 50% of the workday due to his congestive heart failure, would likely be off task at least 25% of the workday due to the distraction of his physical symptoms, and as mentioned above, would need to take unscheduled breaks to lie down during the day. As explained earlier, the ALJ must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(c)(2). The ALJ's failure to weigh this evidence cannot be viewed as harmless in this instance, as the vocational expert's testimony reflects that any one of these limitations alone would preclude competitive employment. (AR 49-50); *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case").

14

In addition, the ALJ mischaracterized the record in at least one respect. Contrary to the ALJ's assertion, Dr. Chaille *did* cite clinical or diagnostic findings in support of his restrictions. That is, Dr. Chaille identified as a clinical finding that a June 2011 echocardiogram showed that Asbury had an ejection fraction of 35%. (AR 510); *see Barry v. Barnhart*, No. 03 C 7239, 2004 WL 2092005, at *9 (N.D. Ill. Sept. 14, 2004) (finding that even though the claimant's ejection fraction had improved to 40% after 10 months of treatment, it constituted a laboratory finding supportive of the physician's misgivings about the claimant returning to even sedentary work full time); *see generally Love v. Colvin*, No. 13 C 2292, 2015 WL 4099750, at *4 (N.D. Ill. July 7, 2015) (reversing and remanding the ALJ's decision where the ALJ, among other things, mischaracterized the opinion of the claimant's treating physician).

And to the extent that Dr. Ruiz thought that an ejection fraction of 35% to 40% was consistent with an ability to perform medium work (AR 497), the ALJ had a duty to confront and resolve this conflict among the medical source opinions. *See Parker v. Colvin*, No. 1:14-CV-00070, 2014 WL 6750047, at *7 (N.D. Ind. Dec. 1, 2014) ("[W]hen the record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict." (alteration in original) (citation omitted)). "[A]s part of the process of building an analytical bridge from the evidence to a conclusion, the ALJ is always required to confront significant evidence that conflicts with his decision." *Misener v. Astrue*, 926 F. Supp. 2d 1016, 1033-34 (N.D. Ind. 2013) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Books*, 91 F.3d at 980; *Diaz*, 55 F.3d at 307-08).

Therefore, a remand is warranted so that the ALJ may consider and minimally articulate her reasoning concerning the weight she assigned to Dr. Chaille's opinion that Asbury in any

15

eight-hour workday would need to take several unscheduled breaks to lie down, elevate his legs to waist level 50% of the time due to his congestive heart failure, and likely be off task 25% or more of the day, which are restrictions inconsistent with the ALJ's findings and conclusions.[4] *See Clifford*, 227 F.3d at 869 (explaining that the court does "not reweigh the evidence, *resolve conflicts*, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" (emphasis added)).

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Asbury and against the Commissioner.

SO ORDERED.

Enter for this 17th day of September 2015.

s/ Susan Collins<br>
Susan Collins<br>
United States Magistrate Judge

---

[4] Because a remand is warranted to reconsider Dr. Chaille's opinion, the Court need not reach Asbury's other arguments.